UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOSEPH ANDRADE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:24-cv-150-AZ |
| ) | |
| SPEEDWAY LLC, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant Speedway LLC's Motion for New Trial [DE 58]. Defendant and Plaintiff both filed motions requesting a hearing on the pending motion. DE 64, 71. After reviewing the motion and opposition, as well as the available trial transcripts, the Court does not believe that further oral argument would be beneficial, and it will deny the motions for a hearing and rule on the papers. The Court further denies Defendant's motion for a new trial because under Indiana substantive law, there is no basis for the Court to overturn the amount of damages the jury awarded to Plaintiff in this case.

## Background

This is a trip and fall case in which Plaintiff Joseph Andrade tripped on the elevated lip between an asphalt parking lot and the concrete gas pump area outside a convenience store owned and operated by Defendant Speedway LLC. Andrade alleged that Speedway was negligent in maintaining the parking lot and that as a result, it was liable to him for his injuries including medical bills, pain, and suffering.

The evidence that came in through testimony of Andrade, his family members, and his surgeon established that Plaintiff paid $8,231.62 in medical bills, primarily for facial reconstruction surgery which included having his jaw wired shut for several weeks. Plaintiff also testified to immense pain and discomfort, continued anxiety and embarrassing permanent drooling problems because of the accident, which was corroborated by family members. The other testifying witness was the manager of the store where the accident took place. During closing argument, Plaintiff's counsel asked the jury for an award of $2 million dollars.

After more than five hours of deliberation, the jury returned a verdict in favor of Plaintiff Joseph Andrade and an award of $500,000. To arrive at that verdict, the jury filled in the verdict form that the parties submitted, and the Court approved. DE 55. Specifically, the jury (1) found in favor of Plaintiff Joseph Andrade on liability; (2) calculated his damages at $1,000,000; and (3) found that Plaintiff was 50% at fault for his injuries. Thus, the jury awarded $500,000, or 50% of $1,000,000. *Id.*

## Discussion

Speedway moves for a new trial pursuant to Federal Rule of Civil Procedure 59(a). A new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. Proc. 59(a)(1)(A). Under Rule 59(a), "[a] new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). "[I]t is an invasion of the

jury's province," however "to grant a new trial merely because the evidence was sharply in conflict." *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995).

At the outset, Defendant has waived any challenge to the jury's verdict in favor of Plaintiff on the issue of liability and fault. DE 58 (Def's Mot.) at 1 (conceding Speedway "recognizes that the jury's fault allocation was supported by the evidence"). Instead, Defendant focuses solely on the damage amount, a request which district courts have "wide discretion" when considering. *Hulbert v. Wilhelm*, 120 F.3d 648, 656 (7th Cir. 1997).

Speedway raises several arguments that are essentially complaints of Plaintiff's counsel's conduct and performance, but which have little apparent connection to the damage award. The generalized nature of Defendant's argument is compounded by its failure to cite any part of the trial transcript or case law in support of its arguments beyond the legal standard for a motion for a new trial in its opening brief.

First, Speedway critiques Plaintiff's counsel's strategy and choice of words in opening and closing statements. Unfortunately, Speedway fails to cite any part of the trial transcript in support of its argument. Nor does Speedway identify any time it objected to the offending statements from Plaintiff's counsel or when the Court failed to sustain an objection that caused unfair prejudice. This undeveloped argument is an insufficient basis to disturb the jury's damage award. Speedway also offers no connection as to why any errant hyperbole from Plaintiff's counsel would have logically influenced the *amount* of the jury's verdict. If anything, most of these

comments go to liability, which Speedway does not contest. Defendant seems to argue that a new trial is warranted if it identifies some areas where Plaintiff's counsel used unnecessary language or did something which was objectionable. But that is not how trials work; "civil litigants are entitled to a fair trial, not a perfect one." *Lemons v. Skidmore,* 985 F.2d 354, 357 (7th Cir. 1993).

Second, Speedway argues that Plaintiff's counsel "repeatedly violated" the Court's Orders on motions in limine. DE 58 at 3. As Speedway notes, two of the three orders it says Plaintiff violated relate to liability not damages; so those are irrelevant given that Speedway has not challenged the jury's liability determination, only its damages verdict.[1] Regarding the supposed motion in limine violation that could logically have a connection to the jury's damage award, Speedway complains that "Plaintiff's son testified that his father had damaged a bridge and crown as a result of the fall." DE 58 at 4. While it is true that the Court barred testimony regarding dental treatment, *see* DE 33 (seeking to bar "testimony or opinion concerning dental treatment as a result of plaintiff's fall") and DE 45 (granting unopposed motions in limine), there's little reason to think to think that this brief, errant testimony by Plaintiff's son had any real impact on the jury's deliberations or the dollar amount of its verdict. Plaintiff's counsel made no reference to dental injuries or Plaintiff's son's testimony in closing argument. And because Speedway has not provided a citation to

---

[1] Again, like with its first argument, Speedway's motion does not cite to a single page or line of transcript testimony in support of its arguments pertaining to Plaintiff's counsel's supposed errors. Speedway bears the burden for seeking the relief it is requests; it cannot shift the onus to the Court to reread the entire transcript to find support for Speedway's underdeveloped argument on this point or rule simply on the Court's recollection of the trial.

4

(or even ordered an official copy of) that portion of the trial transcript, the Court must rely solely on its own recollection of trial. The Court's recollection is this testimony was brief, non-consequential, and unobjected to. All Plaintiff's son testified to was that Plaintiff broke some of his teeth in the fall. Plaintiff's counsel did not reference it during closing arguments. Finally, when compared to the other injuries Andrade and his family testified to, it is unrealistic to think that a vague unremarkable reference to dental bridge and crown work would have impacted the verdict more than Andrade's testimony regarding the pain of the fall, having his mouth wired shut for weeks and permanent drooling as a result.

Third, Speedway argues that Plaintiff's counsel "attempted to portray Speedway as evasive" through an unsuccessful attempt to cross examine Speedway's witness (the store manager) using a 2006 local ordinance from the city of Valparaiso, Indiana. DE 58 at 4. As Speedway acknowledges, it quickly objected to this questioning at trial and the Court sustained its objection and prohibited the testimony or use of the 2006 ordinance. Likewise, when Plaintiff out-of-the-blue attempted to call Speedway's trial representative as a witness on rebuttal, the Court promptly shut the effort down and no testimony was allowed. Thus, it's unclear what Speedway is complaining of here since all of this irrelevant and potentially prejudicial testimony was excluded by the Court.

Speedway's final argument in its opening brief, and really the heart of its motion, was that no "reasonable jury" could have valued Plaintiff's damages at $1 million. In support of this, Speedway makes much of Plaintiff's surgeon's testimony

5

that Plaintiff had (from a worker's compensation perspective) "no permanent partial impairment rating" and that Plaintiff's total out-of-pocket medical expenses were $8,231.62. DE 58 at 5-6. Plaintiff on the other hand, highlights the testimony relating to his pain and suffering at the time of the accident and in the years since.

In challenging the damage amount of the verdict, Defendant bears a heavy burden. When a federal court sits in diversity or a state law claim is tried in federal court, damage awards must be evaluated under the state law of the jurisdiction which governs the claim. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 430–31 (1996). In other words, the standards for reviewing damage awards are substantive law for purposes of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), so "when a federal jury awards compensatory damages in a state-law claim, state law determines whether that award is excessive." *Rainey v. Taylor*, 941 F.3d 243, 253 (7th Cir. 2019).

Indiana law all but presumes the reasonableness of a jury's verdict in tort cases so long there is at least some evidentiary basis for the amount. *Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1019 (7th Cir. 2020) ("Indiana courts will not disturb a compensatory-damages award '[i]f there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting.'") (quoting *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 462 (Ind. 2001)). The Seventh Circuit describes the standard as "deferential." *Id.*

Furthermore, Indiana courts heavily disfavor "comparative analysis" when reviewing a damages award. *Weinberger v. Boyer*, 956 N.E.2d 1095, 1114 (Ind. Ct. App. 2011). Instead, Indiana embraces a "historical regard for the uniqueness of every

6

tort claim and ... the belief that compensatory damage assessments should be individualized and within the province of the factfinder." *Id.* So long as there is some reasonable ground for a damage award, it cannot be disturbed. *Id.* at 1112 ("The jury's damage award will not be deemed the result of improper considerations if the size of the award can be explained on any reasonable ground.").

This is such a case. During closing arguments, Plaintiff asked the jury to award him $2 million primarily based not on Andrade's out-of-pocket expenses but because of his pain and suffering. The jury, after several hours of deliberation, awarded half the amount Plaintiff requested or $1 million. The jury then further reduced the amount of damages by another 50% based on its finding of split-fault between the parties.

Awarding 25% of a Plaintiff's requested damages does not sound like a jury which was operating under inflamed passions or without rationale. Nor does it sound like the jury was "punishing" Speedway, as Defendant contends. A verdict in which the jury found that both Plaintiff and Defendant were both partially to blame for the accident is simply inconsistent with a finding that the jury impermissibly sought to punish one side. Instead, the verdict and damages award more than likely suggests the opposite: the unanimous judgment and reason of a group of strangers who listened to the evidence, discussed it among themselves, and reached a decision they could all agree upon.

What dollar amount precisely correlates with the pain and suffering resulting from a dramatic faceplant onto concrete is frankly unknowable. *See Weinberger*, 956

N.E.2d at 1114. The jury heard testimony from Plaintiff and his family regarding the pain he suffered, the experience of having his jaw wired shut for weeks, and his continued, uncontrollable drooling even years after the fact. Is that worth $500,000? $1 million? $2 million? $100,000? The answer to that question was for the jury to evaluate after it found in favor of Andrade on liability. At trial and in its motion, Speedway focuses on the fact that Plaintiff's out-of-pocket expenses were less than $10,000 and that from a worker's compensation perspective (Plaintiff was retired at the time of the accident), his surgeon said he had no permanent disability. That evidence certainly supported a lower damage figure, but the jury did not see it the same was as Speedway. That's the nature of the evidence cutting both ways, as is to be expected in any case that proceeds to trial. *Latino*, 58 F.3d at 315.

This case, like so many, could have been tried 10 different times and resulted in 10 different verdicts. That does not mean that all 10 or even nine are unreasonable. It's "entirely possible that another jury might have evaluated [Andrade's] damages more modestly, but that is not the standard." *Kaiser v. Johnson & Johnson*, 334 F. Supp. 3d 923, 944 (N.D. Ind. 2018), *aff'd*, 947 F.3d 996 (7th Cir. 2020) (quoting *Adams v. City of Chicago*, 798 F.3d 539, 543 (7th Cir. 2015)). Pain and suffering are harms that are difficult to monetize. *Hakim v. Safariland, LLC*, 79 F.4th 861, 873 (7th Cir. 2023) ("This is particularly true in personal-injury cases, where the precise dollar value of a person's pain and suffering is difficult to measure.") (applying Illinois law). It will never be "an exact science." *Kaiser*, 334 F. Supp. 3d at 944; *Jutzi-Johnson v. United States*, 263 F.3d 753, 758 (7th Cir. 2001) ("The problem of figuring out how to

value pain and suffering is acute, however. Various solutions, none wholly satisfactory, have been suggested ..."). Entrusting a jury with this daunting task and relying on their unanimous judgment is a feature, not a bug, of the American legal system. Speedway has failed to offer a sufficient legal or evidentiary basis to set the damage award aside in this case.

The final matters to address are the numerous issues Speedway raises for the first time in its reply brief. *See* DE 70. As an initial matter, arguments raised for the first time on reply are impermissible, which means the arguments are waived. *Kaiser*, 947 F.3d at 1021. Nonetheless, the Court will address them briefly because none of them would have moved the needle even if timely made.

First, in its reply brief, Speedway seeks to renew its motions form the trial requesting a "motion for judgment on the evidence." Presumably this is a reference to Speedway's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) which the Court denied at the conclusion of the evidence. Apart from being raised (or renewed) for the first time in a reply brief, Speedway ignores the timing requirements for renewing such a motion. Speedway's reply brief was filed on November 14, 2025, far outside Rule 50(b)'s requirement that any renewed motion for a judgment as a matter of law be brought within 28 days of the judgment. Fed. R. Civ. P. 50(b). The same is true for Speedway's "renewal" of its motion for a mistrial made in its reply brief for the first time.

Admittedly, Plaintiff's counsel's closing statement was disorganized, unfocused on the issues, and veered outside what would have been expected from

9

experienced trial counsel. The Court had to interrupt Plaintiff's counsel's closing statement three separate times during rebuttal because it treaded into impermissible territory. Trial Tr. 28:17-18 ("Mr. Montgomery, just stick to the arguments and the facts …"); *id.* at 29:10-11 ("Mr. Montgomery, stick to the facts and arguments of this case"); *id.* at 30:12-14 ("Mr. Montgomery, I'm going to instruct you to only focus on the facts of this case and not any future incidents or hypotheticals."). And then, at the conclusion of closing statements, and at the request of Defense counsel, the Court instructed the jury with an additional limiting instruction:

> "I do want to remind you that we're here today – the case is to decide the claims by Mr. Andrade versus Speedway. It's not to decide any other issues or have it regarding future incidents. That's not your obligation here. Your obligation here is to decide what happened in this case and whether or Speedway is liable to Mr. Andrade and whether or not there's any contributory fault, nothing beyond that."

Trial Tr. 31:10-16. The Court is not convinced that Plaintiff's counsel's animated behavior during sidebars, use of profanity in the presence of the jury, and repeated admonishments from the Court benefitted him or his client.

After hearing argument outside the presence of the jury, the Court then ruled on Speedway's motion for a mistrial, explaining that while Plaintiff's counsel at times "pushed the limits," nearly every time Defendant objected, the Court ruled in its favor and issued limiting instructions to the jury. Objectionable evidence and argument comes up in every single trial. The jury system is premised on "the law's broader assumption that jurors can be relied upon to follow the trial judge's instructions." *Samia v. United States*, 599 U.S. 635, 646 (2023). There's no indication that was not

the case here. Speedway, unhappy as it may be with the result, offers no compelling reason to depart from this foundational assumption or call it into question.

## Conclusion

Accordingly, and for the reasons discussed, Defendant Speedway LLC's Motion for New Trial [DE 58] is **DENIED**. Likewise, Plaintiff's Motion for Hearing [DE 64] and Defendant's Motion for Oral Argument [DE 71] are both **DENIED**.

SO ORDERED this 18th day of February 2026.

    /s/ *Abizer Zanzi*
    MAGISTRATE JUDGE ABIZER ZANZI
    UNITED STATES DISTRICT COURT